# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ELZETTA MYRKS, )
 )
       Plaintiff, )
vs. ) NO. CIV-12-0647-HE
 )
THE CITY OF OKLAHOMA CITY, )
 )
       Defendant. )

## ORDER

Plaintiff Elzetta Myrks sued her former employer, the City of Oklahoma City, asserting claims for hostile work environment and retaliation under Title VII of the Civil Rights Act, interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and for a related claim asserted as an Oklahoma Burk tort. Defendant has moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted). The motion is at issue.

The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes that defendant's motion should be granted in part and denied in part.

### Background

For the most part, the pertinent background facts are undisputed. Plaintiff began

working for the City of Oklahoma City in 2007 as a Customer Service Representative. On October 15, 2010, following her application for the position, plaintiff was transferred to the Meter Shop as a Data Systems Tech II. Plaintiff worked in that position approximately 13 working days before she left on November 3, 2010. Plaintiff contends that she was subjected to a hostile work environment by her supervisor, T.O., his brother, M.O., a supervisor in another department, and other personnel in the shop. On November 4, plaintiff complained about this situation to the Personnel Department, but when she arrived with her attorney for her appointment with the personnel specialist, B.M., an argument immediately erupted. B.M.'s supervisor, Monica Coleman, stepped in moments later and took plaintiff's complaint. Plaintiff was subsequently transferred to Customer Services and then to Solid Waste before she accepted a demotion to a position as a Communications Dispatcher in Solid Waste. Defendant investigated the complaint, later resulting in a report concluding that plaintiff's allegations could not be substantiated and that a violation of the City's policies had not been established.

In June of 2011, plaintiff became a municipal court clerk,[1] which defendant states was a promotion, while plaintiff claims it was only a pay raise. Plaintiff contends that on July 21, 2011, while she was complaining to her supervisor about a co-worker off-loading her work onto plaintiff, the supervisor allegedly stated, "I've worked with bitches before," which comment plaintiff contends was directed at her or at least made only in her presence. On

---

[1] It is unclear whether plaintiff became <u>the</u> Municipal Court Clerk or a deputy in that division, but it appears she was a support staff member in that office.

2

July 25, plaintiff received a reprimand for her conduct apparently in connection with the same meeting. On August 11, she entered into a Constructive Action Plan involving a deferred action arrangement potentially allowing her to avoid a formal reprimand, although plaintiff claims she only agreed to this under duress.

Plaintiff began taking FMLA leave on August 25, 2011, after which she worked four hour days. On September 12, defendant issued plaintiff a memo that stated her healthcare certification was unclear and needed clarification. The next day, plaintiff provided a letter from her health care provider clarifying she needed the reduced schedule of four hours a day for the next two months. Approximately a week later, plaintiff submitted a letter of resignation, effective immediately. She later emailed the Courts Director, on September 25, 2011, asking for her job back. The request was denied. Plaintiff now asserts that she was constructively discharged.

## Analysis

### A. Hostile Work Environment

Plaintiff alleges she was subject to a hostile work environment during her time at the Meter Shop and while she was in Municipal Courts. "Under Title VII, it is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." Morris v. City of Colo. Springs, 666 F.3d 654, 663 (10th Cir. 2012) (internal quotation marks and citations omitted). To make out a claim of discrimination based on a hostile work environment, plaintiff must show "(1) that she was discriminated

against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Id.* (citation omitted).

To be protected by Title VII, the harassment must have been "so objectively offensive as to alter the 'conditions' of the victim's employment." Harsco Corp. v. Renner, 475 F.3d 1179, 1187 (10th Cir. 2007) (citation omitted). Courts look at the totality of the circumstances and consider such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Morris, 666 F.3d at 664.

Considering the evidence in the light most favorable to the plaintiff, she has presented evidence that, in the 13 days that she worked at the Meter Shop, her supervisor and/or co-workers made many comments or references of a sexually explicit nature.[2] Further, there is some evidence that one individual allegedly asked plaintiff to come to his house and hold a video camera for him and another female employee and that another intentionally poured water down the backside of one employee and then asked her to turn around so he could see. Finally, she alleges that on one occasion, she was highly offended when a person hugged her

---

[2] *Defendant contends that much of plaintiff's evidence is irrelevant because it did not involve plaintiff, but took place between either M.O. or T.O. and one of the other females in the office, albeit in her presence. However, the courts "have never held . . . that to be subjected to a hostile work environment the discriminatory conduct must be both directed at the victim and intended to be received by the victim." E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 798 (10th Cir. 2007).*

4

from behind, which she described as "groping" her or at least that it was done in a sexually provocative manner. While there are factual disputes as to these incidents, the court concludes plaintiff has presented sufficient evidence to create a jury question as to whether she was subjected to a hostile work environment based on sex.

In addition to the necessary showing as to a hostile work environment, a plaintiff must also show a basis for holding the employer liable. Harsco Corp., 475 F.3d at 1186. Defendant relies on the Ellerth-Faragher affirmative defense.[3] "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Helm, 656 F.3d at 1285 (citations omitted). Here, it is unnecessary to address the first element, as defendant has failed to present any evidence as to the second necessary element. Indeed, defendant acknowledges that plaintiff used the prescribed procedures to make her complaint. Therefore, there is no basis for application of the Ellerth-Faragher affirmative defense.[4]

To the extent plaintiff alleges a separate hostile work environment claim based on

---

[3]*Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). Where the sexual harassment was perpetrated by a supervisor, and in the absence of a tangible employment action, an employer is subject to vicarious liability for the sexual harassment unless it can prove the Ellerth-Faragher affirmative defense. Helm v. Kansas, 656 F.3d 1277, 1285 (10th Cir. 2011).*

[4] *Neither party sought to distinguish, at the summary judgment stage, between liability based on co-worker harassment and liability based on supervisor harassment, as might arguably be relevant in these circumstances.*

conduct that occurred at Municipal Courts, the court concludes summary judgment is appropriate. Plaintiff alleges that her supervisor in Municipal Courts stated, "I've worked with bitches before," which she states was made only in her presence and which she views as being directed at her [Doc. #34 at 12]. However, even viewed in the light most favorable to her, this isolated comment, if made, while inappropriate, is not sufficiently severe to alter the terms or conditions of plaintiff's employment and create an abusive working environment. *See* Morris, 666 F.3d at 666 ("A plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of . . . sporadic . . . slurs . . . .'").

## II. Retaliation

Plaintiff also alleges she was retaliated against for reporting the allegedly hostile work environment. "Title VII forbids retaliation against an employee because she has 'opposed' any practice made unlawful by Title VII." Stover v. Martinez, 382 F.3d 1064, 1070 (10th Cir. 2004) (quoting 42 U.S.C. § 2000e-3(a)). In the absence of direct evidence, the claim is analyzed under the McDonnell Douglas burden-shifting framework. Under that framework, a plaintiff asserting a retaliation claim must make a prima facie showing "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Tabor, 703 F.3d at 1219 (citation omitted). If the plaintiff makes such a showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its decision. Bertsch v. Overstock.com,

684 F.3d 1023, 1028 (10th Cir. 2012). The plaintiff must then show that the employer's articulated reason was a pretext for retaliation. *Id*. at 1028–29.

Defendant concedes the first element is satisfied by plaintiff's complaint to personnel about the work environment at the Meter Shop. However, defendant challenges the second element, which requires a plaintiff to show that the challenged action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted) (emphasizing the importance of material adversity of the actions and noting that "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence"). The standard is objective and "[e]ach case is 'judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009) (citations omitted). Defendant construes plaintiff's argument as asserting three potential actions to satisfy this element: (1) her transfer to Customer Services, (2) her transfer to Solid Waste, and (3) her ultimate resignation from Municipal Courts, which plaintiff alleges was the result of constructive discharge. Plaintiff also submits that her interaction with the personnel specialist constitutes retaliation.

Plaintiff's initial transfer back to Customer Services does not satisfy this element as the undisputed facts reveal that plaintiff advised Monica Coleman, the Assistant Personnel Director who took her complaint regarding the Meter Shop allegations, that she did not want to return to the Meter Shop, so Coleman told her she would be temporarily reassigned during

7

the on-going investigation. Considering all the circumstances, this temporary reassignment to Customer Services to accommodate plaintiff's request does not rise to the level of harm that a reasonable employee would find materially adverse. *See* Semsroth, 555 F.3d at 1187 (emphasizing that the voluntary nature of plaintiff's submission to a fitness for duty exam prevented it from satisfying the Burlington test). The same is true of plaintiff's move to Solid Waste. The undisputed facts reveal that plaintiff requested another temporary transfer on November 9, 2010, because she felt there was a conflict of interest being in Customer Services, where her supervisor was allegedly a "drinking buddy" of one of the Meter Shop personnel allegedly creating the hostile environment (and where she did not like answering the phone).[5]

Plaintiff also alleges that her resignation satisfies this element, claiming that she was constructively discharged. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." PVNF, 487 F.3d at 805 (citation omitted). The plaintiff's burden in establishing a constructive discharge case is substantial. *Id*.; *see also* Fischer v. Forestwood Co., Inc., 525 F.3d 972, 981 (10th Cir. 2008) ("[A]n employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant."). The test is objective; a plaintiff's

---

[5] *Plaintiff attempts to assert that her transfer to Solid Waste was involuntary because she alleges T.O. continued to harass her by looking at her and trying to intimidate her in her new office. However, she raised that concern on November 12, 2010, after she had already requested to be moved on November 9. Further, the transfer appears to have been a lateral transfer, which plaintiff admitted was not a demotion [see Doc. #34-1 at 114:18-25].*

8

subjective feelings about the situation are irrelevant. PNVF, 487 F.3d at 805. Plaintiff has not presented sufficient evidence to create a justiciable question as to this high standard. Her evidence boils down to the receipt of a reprimand (which was deferred and potentially eliminated by a Constructive Action Plan), being asked for clarification on her FMLA leave, the supervisor's reference to "bitches" nearly two months earlier, and experiencing an allegedly hostile work environment over ten months prior. At most, these working conditions could be described as "unpleasant" (or are too attenuated to have contributed), but they come nowhere near to describing conditions so intolerable that a reasonable employee would feel compelled to resign. Further, the undisputed facts reveal that plaintiff sought a reinstatement to her position five days later, reinforcing the conclusion that plaintiff's resignation does not constitute constructive discharge. *See* Fischer, 525 F.3d at 982 ("The fact that [plaintiff] asked to rejoin the company after these incidents further undermines his contention that this alleged harassment was intolerable."). Defendant will be granted summary judgment as to all claims relying on a constructive discharge theory.

Finally, Plaintiff points to the interaction with the personnel specialist as evidence of retaliation. Both parties agree that plaintiff made an appointment to make her complaint about the hostile work environment, but that as she and her attorney approached the personnel specialist, he began arguing with the pair, including shaking his finger in one of their faces. However, moments later, as the situation was unfolding, Monica Coleman, the personnel specialist's supervisor, immediately stopped the argument. She then took plaintiff's complaint with plaintiff's attorney present. The verbal argument, while arguably

intense, was immediately stopped by the personnel specialist's supervisor. Plaintiff's complaint was then appropriately taken and appropriate follow-up was made.[6] There is no basis in these facts for a conclusion that a reasonable person would be dissuaded from making a charge of discrimination. Further, plaintiff did not include any allegations about that interaction or its retaliatory nature in her EEOC complaint, and, therefore, it is not clear that her claim in this regard has been exhausted. *See* Arnett v. Univ. of Kan., 371 F.3d 1233, 1238 (10th Cir. 2004) ("We lack jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge." (citation omitted)).

Defendant is entitled to summary judgment on plaintiff's Title VII retaliation claim.

## III. FMLA

Plaintiff contends that defendant's actions on September 12, 2011, where defendant issued plaintiff a memo stating that her original healthcare certification was unclear and needed clarification as to her reduced hours, constituted interference and retaliation under the FMLA. The FMLA "makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To establish an interference claim, an employee must show: "(1) [s]he was entitled to FMLA leave, (2) an adverse action by [her] employer interfered with [her] right to take FMLA leave,

---

[6] *It is undisputed that plaintiff was immediately transferred from the meter shop pending the investigation and that the personnel specialist was disciplined for his misconduct as to how he responded to plaintiff's complaint. There is no basis in these circumstances for plaintiff's apparent view that the personnel specialist should have been fired for getting in the argument.*

10

and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Id*. (quoting Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006)).

Plaintiff's interference claim fails at the second element, as the undisputed facts show that plaintiff continued taking her FMLA leave after she claims defendant terminated her leave, so she never experienced an interference with her right to take her FMLA leave. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) ("In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."). Plaintiff claims her FMLA rights were terminated based on her conversation with her supervisors on September 12, 2011, and the memo from her employer requiring clarification. However, plaintiff presents no evidence that she was actually prevented from taking her FMLA leave after that conversation, and defendant's pay records, which plaintiff failed to controvert, show that plaintiff worked only four hours a day until she resigned. Plaintiff's own testimony indicates that she was told either to start working eight hours a day "or – and to get additional paperwork stating that I needed to work only four hours a day," after which she procured the additional paperwork in order for it to "remain modified, as it had been for the last week or two" [Doc. #34-1 at 150:6-8, 151:19-21 (emphasis added)].[7]

---

[7]*Furthermore, an employer has a duty when it finds a certification incomplete to advise the employee of that fact and provide her with an opportunity to cure the deficiency. See 29 C.F.R. §*

11

Because plaintiff failed to raise a disputed issue of material fact as to whether defendant interfered with her FMLA leave, summary judgment will be granted for defendant on the interference claim.

FMLA retaliation claims are also subject to the McDonnell Douglas burden-shifting analysis. Brown, 700 F.3d at 1229. To establish a prima facie case of FMLA retaliation, the plaintiff must show "(1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse,[8] and (3) there is a causal connection between the protected activity and the adverse action." Id. (citation omitted). The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. Id. Finally, the burden shifts back to the employee to show that the employer's reasons for its action are pretextual. Id.

Defendant concedes the first element of the prima facie case but appropriately challenges the second. Plaintiff's claim fails, as the only action the employer took was advising plaintiff that her medical certification was incomplete and that she would need additional certification to retain her FMLA leave.[9] As discussed above, an employer is

---

*825.305(c); Austin v. Jostens, Inc., 07-2380-JAR, 2008 WL 4642277 at \*9 (D. Kan. Oct. 16, 2008); Sorrell v. Rinker Materials Corp., 395 F.3d 332, 337 (6th Cir. 2005). Here, plaintiff submitted a new certification the very next day and there is no evidence that she was prevented from continuing to take FMLA leave.*

[8] *The standard for this element is the same as that in the Title VII retaliation context. See Metzler, 464 F.3d at 1171 n.2.*

[9] *Plaintiff states that "[u]nlike any other employee, similarly situated, Plaintiff was mandated to provide additional medical documentation to her supervisor even though she was already approved FMLA [sic] leave" [Doc. #34 at 32]. However, plaintiff points to no admissible evidence of any*

12

required to advise an employee when her certification is incomplete and give her an opportunity to cure the deficiency. Even if that was not the case, asking an employee for clarification is not the type of action that a reasonable employee would find materially adverse. Plaintiff also points to a statement allegedly made by her supervisor that defendant "hired a full time employee and not a part time one" [Doc. #34 at 32], however, this does not rise to the level of a material adverse action. *See* Burlington, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

Plaintiff also asserts constructive discharge as an adverse action to satisfy the second element. However, as discussed above, plaintiff's evidence does not meet the standard for constructive discharge. Defendant is entitled to summary judgment on her FMLA retaliation claim.

**IV. State Law Claims**

Defendant assets that it is entitled to summary judgment on plaintiff's state law Burk[10] tort claims because plaintiff was not an at-will employee and because plaintiff never filed a tort claim with defendant. The elements of a Burk claim are: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an

---

*other employees taking FMLA leave, much less whether they were similarly situated under the law. Further, it is undisputed that the original request was for an indeterminate period of time, making clarification at some point an obvious step.*

[10] Burk v. K-Mart Corp., 770 P.2d 24, 28 (Okla. 1989).

13

Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal." Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty., 186 P.3d 928, 932 (Okla. 2008) (citation omitted). The undisputed facts establish that at all times during her employment, plaintiff was covered by a Collective Bargaining Agreement ("CBA"). Plaintiff's participation in the CBA, which provided her grievance procedures to challenge a discharge and be reinstated if that action was determined to be unjust, among other protections, precludes availability of a Burk tort remedy, as she was not an at-will employee. *See* McCrady v. Oklahoma Dep't of Pub. Safety, 122 P.3d 473, 475-76 (Okla. 2005) (state classified employee "protected by detailed rules and procedures concerning all aspects of the employment relationship" was not at-will employee and, therefore, could not maintain a Burk action); Medlock v. United Parcel Serv., Inc., 608 F.3d 1185, 1198 n.10 (10th Cir. 2010) (noting that Burk tort was likely unavailable to an employee subject to a CBA that required "just cause" to terminate an employee). Plaintiff has failed to raise a disputed issue of material fact as to whether she was an at-will employee. Summary judgment will be granted to defendant on plaintiff's state law Burk tort claims.

**V. Punitive Damages**

Defendant also moved for summary judgment on plaintiff's request for punitive damages, asserting that punitive damages are not available against municipalities under either federal or state law. Plaintiff did not respond to this assertion and has therefore confessed

14

its unavailability as a matter of law.[11] Summary judgment will therefore be granted to defendant as to the availability of punitive damages.

## Conclusion

Defendant's motion for summary judgment [Doc. #26] is **DENIED** as to plaintiff's hostile work environment claim based on her time in the meter repair shop, but is **GRANTED** as to all other claims.

**IT IS SO ORDERED**.

Dated this 15th day of May, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[11] *Defendant's position appears consistent with the applicable standards. See, e.g.,* Poolaw v. City of Anadarko, Okla., *738 F.2d 364, 367 (10th Cir. 1984), overruled on other grounds by* Skinner v. Total Petroleum, Inc., *859 F.2d 1439, 1445 n.6 (10th Cir. 1988), ("[M]unicipalities cannot be held liable for punitive damages in § 1981 actions.").*